# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE | CASE NO: 13-06438 (BKT) |
| **Sheida Rivera Siverio** | Chapter 13 |
| Debtor (s) | |
| **Miguelina Delgado Rodríguez** | Adversary Proceeding: |
| Plaintiff | 13-0218 (BKT) |
| v. | |
| **Sheida Rivera Siverio** **José Ramón Carrion Morales, Chapter 13 Trustee** | |
| Debtor/Defendant | |

## **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE BANKRUPTCY COURT:

Comes now, Miguelina Delgado Rodríguez through her undersigned attorney, and before this Honorable Court most respectfully requests, states and prays as follows:

### I. **Introduction**

Defendant has filed a motion asking the court to dismiss this adversary proceeding. Plaintiff opposes said request for the following reasons.

### II. **Defendant has partially failed to comply with L. Cv. R. 56**

Movant's section of "Material Facts" shows that some of the numbered paragraph complies with L.Cv.R. 56 (b). Said rule requires that each fact asserted in the statement shall be supported by a record citation as required by

1

L.Cv.R. 56 (e). An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

In this respect, the following statements of material facts should be disregarded for failure to comply with local rules.

(a) The second sentence of paragraph 20 should be disregarded because it lacks a specific citation to record material.

(b) The second sentence of paragraph 21 should be disregarded because it lacks a specific citation to record material.

(c) The second, third, fourth and fifth sentence of paragraph 22 should be disregarded because it lacks a specific citation to record material.

### III. <u>Dischargeability under 11 U.S.C. §523 (a) (6)</u>

In the case at bar Rivera Siverio has stated that she and her husband bought the real property to "take advantage of the offer" but not to willful and malicious injure Mrs. Delgado. This carefully drafted choice of words mounts to no more than a very colorful euphemism. Let's see.

The actions perpetrated by Rivera Siverio were willful because they were aimed at creating a deliberate and intentional injury against "Delgado Rodríguez". There is no way that we can draw a distinction between her acts

2

and the injuries created because they were so tied to each other that each act gave rise to a injury in a foreseeable manner and, therefore every act was a deliberate injury. In any event, one is the only consequence of the other.

The facts behind this case show a string of events that surely weren't the product of inadvertent actions. They were the product of a carefully planned scheme to deprive the plaintiff of her property without spite to the state court recovery complaint and despite the fact that the acquisition of the property and her title was illegal in every way and unable to be upheld in a court of law.

It's clear that "Delgado Rodríguez" suffered an injury. The injury consisted in that she lost a property to a third party. It was undisputed that "Delgado Rodríguez" was the owner of a real estate property located at Cabo Rojo SUMF[1]¶14. While "Delgado Rodríguez" executed a deed of sale its undisputed that "Rivera Román" never became the owner of the property but only a creditor of Miguelina Delgado SUMF¶ 25 and 26. Therefore, "Rivera Román" didn't have the legal capacity to transfer ownership to third parties SUMF¶27.

Said property was valued at $60,000.00 SUMF¶42. The state court ruled that the interest "Delgado Rodríguez" has "Delgado Rodríguez" after the conversion of the property amounted to $45,000.00 SUMF¶63.

The cause of the injury was "Rivera Siverio" actions. She executed deed 3 to acquire the property in controversy for $15,000.00 SUMF¶ 30. In that deed she represented that "Rivera Román" was the owner, that "Rivera Román" acquired from "Delgado Rodríguez" through a $15,000.00 sale, she claimed immediate

---

[1] The acronym SUMF stands for Plaintiff's Statement of Uncontested Material Facts.

possession of the property, registered deed 309 and the same day at the next entry registered deed 3. SUMF¶32, 33, 34, 35, 36, 37, 38, 39, 40 and 41.

However, after the complaint for recovery was filed "Rivera Siverio" took her actions even further. She executed a promissory note and registered a lien over the property in controversy SUMF¶44-50. Later on, she sold the property to a third party SUMF¶51 turning in a $45,000.00 profit at the expense and injury of the real owner SUMF¶51.

She converted the property to cash while conscious and aware that the true owner was "Delgado Rodríguez" SUMF¶66. This sale prevented the recovery of the property SUMF¶55 and therefore the cash equivalent remedy was granted by the court SUMF¶63. Therefore, the injury was the result of "Rivera Siverio" actions.

There is no doubt that "Rivera Siverio" intended to cause the injury. "Rivera Siverio" caused on "Delgado Rodríguez" a deliberate injury by interfering with the personal guarantee agreement between "Rivera Román" and "Delgado Rodríguez" SUMF¶24. She was conscious that the property in controversy belonged to "Delgado Rodríguez" SUMF¶66, she knew about the conditions of the loan agreement between "Delgado Rodríguez" and "Rivera Román" SUMF¶64. Despite that she executed deed 3 to claim immediate possession of the property SUMF¶30 and 38. Then, when confronted with the complaint she choose to create a bogus lien SUMF¶44-50 and later on convert the property to cash SUMF¶51-57 and expend the proceeds SUMF¶68.

This wasn't to take "advantage of an offer" as "Rivera Siverio" pleads, but to deliberately injure "Delgado Rodríguez" by removing from her dominion and control her property for a ridiculous amount to, later on, sell it while litigation over the title was underway, to cash in $45,000.00 at the expense of the real owner. A fact she knew very well and was conscious about.

Thus, the undisputed facts meet the willful element required under 11 USC §523(a)(6).

Last, but no least, "Rivera Siverio" had no just cause or excuse "Rivera Siverio" for her actions resulting in the injury. That is, the injury that "Rivera Siverio" perpetrated against "Delgado Rodríguez" property was malicious. "Rivera Siverio" had no motive, other that greed, to interfere with the personal guarantee between "Delgado Rodríguez" and "Rivera Román". Furthermore, once facing the litigation she had no right or justification to falsely encumber the property with a mortgage and sell it to a third party to cash in the value of the property.

Her actions were more than mere reckless; they were deliberate with the purpose to injure. "Rivera Siverio" was consciously violating property rights upon which "Delgado Rodríguez" had an economic right and expectancy. "Rivera Siverio" actions mount to social disregard of her societal duties. That is, to interfere with an agreement for the purpose of depriving an owner of a property and later converting the property to cash to expend the proceeds and leave the real owner without her property and without the proceeds and further

pretending to obtain a bankrupcy discharge to finally get away with it. This hurts the conscience and shouldn't be tolerated.

In this case, the undisputed facts show by a preponderance of the evidence that "Rivera Siverio" acted with malice. She knew very well that by executing the deeds, filing them for registration and converting the property to cash she was injuring the real owner by depriving her of the property. There is no other way around it.

We might concede that if a debtor is granted a discharge under 1328 (a) then and only then will her debt will be discharged even if determined to be willful and malicious. However, that determination is premature since there is also the possibility that the debtor might obtain a discharge under 1328 (b). In that case the willful and malicious exemption to discharge will stand. So, we present our argument under 523(a)(6) to preserve it in case of a hardship discharge.

### IV.     Dischargeability under 11 U.S.C. § 523 (a) (2)

The undisputed material facts show that the debtor Sheida Rivera Siverio ("Rivera Siverio") has a debt whose source of liability was her actions to obtain money and property by false pretenses, false representations and actual fraud.

It's undisputed that the transaction between Miguelina Delgado and Monserrate Rivera, was framed the way it was by suggestion of the Notary Public, Luis A. Arroyo Vázquez, who advised the parties to name the deed "Deed of Sale". PSUMF[2] ¶19. Luis A. Arroyo Vázquez, is currently under referral

---

[2] The acronym PSMUF stands for Plaintiff's Statement of Uncontested Material Facts filed at Docket ____.

to the Puerto Rico Solicitor General from the Puerto Rico Supreme Court for the appropriate action. PSUMF ¶20.

This transaction (a) wasn't a sale but a personal guarantee agreement. PSUMF ¶24, (b) by this agreement Ms. Rivera Román became a creditor of Miguelina Delgado but didn't became the owner of the property in Cabo Rojo. PSUMF ¶25 and 26. She never obtained the legal capacity to transfer ownership to third parties, even in the event of default by her debtors Mrs. Delgado Rodríguez. PSUMF ¶27.

However, Rivera Siverio seized the "opportunity" to make a profit at the expense and injury of the real owner of the property, Miguelina Delgado Rodríguez ("Delgado Rodríguez"). If Rivera Siverio hasn't had any previous knowledge about the situation, plaintiff will have no remedy against her. But, as the undisputed fact shows (a) Rivera Siverio knew about the conditions and terms of the loan agreement between Mrs. Delgado Rodríguez and Mrs. Rivera Román. PSUMF ¶ 64, (b) she lacked good faith at the moment that she acquired the property in controversy. PSUMF ¶65 and (c) even more damaging to her defense is the fact that she was conscious of the fact that the real owner of the property in controversy was Miguelina Delgado-Rodríguez. PSUMF ¶66.

What follows is a successive manipulation of deeds and the property registry to perpetuate an illegal acquisition of a property that didn't belong to her or to her transferor, against the true owners will. This chain of events had the ultimate purpose of fictitiously transferring ownership in an illegal manner to cash a $45,000.00 profit at the expense and damage of the true owner and

7

against her will. This was done while the case was being litigated and the title was a subject of the controversy. Ultimately, the last sale in the string of alienations prevented the plaintiff from recovering the property, a remedy that the court converted to its equivalent $45,000.00. PSUMF ¶55 and 63. On the other hand, "Rivera Siverio" was able to enjoy, dispose and deplete the $45,000.00 proceeds.

The first link in the chain was deed 3. This transaction took place on March 10, 2000 for the price of $15,000.00, according to Deed number 3, issued on March 10, 2000 before Notary Public Joaquín Martínez García. PSUMF ¶ 30 and 32. In that deed Mrs. Rivera Siverio represented that Monserrate Rivera Roman was the owner of the property in controversy. PSUMF ¶32 and 34. She also stated and represented that Monserrate Rivera Roman acquired the property from Miguelina Delgado Rodriguez. PSUMF ¶35. She also stated and represented that Monserrate Rivera Roman sold to her and she receive the property for the amount $15,000.00. PSUMF ¶36. She further stated that the statements contained in the aforementioned deed adequately reflected her wishes and that there was no need to add, removed, changed, or modified phrase, word or concept. PSUMF ¶ 37. By that deed "Rivera Siverio" pretended to claim the immediate possession of the property. PSUMF ¶38. She further pretended to register the deed in the public Property Registry by filing the deed on March 10, 2000 before the Cabo Rojo office. PSUMF ¶39. That same day, Deed 309 before Notary Public Luis A. Arroyo Vázquez was presented at entry 36, Log Book 619, at the San Germán office of the Property Registry. PSUMF

¶40. She succeeded in obtaining the registration of the property as the owner. PSUMF ¶41. This statements and actions constitute false statements or pretenses as well as actual fraud. If we take into consideration that Rivera Siverio was conscious of the fact that the real owner of the property in controversy was Miguelina Delgado-Rodríguez, then to pretend to acquire the property from someone that wasn't the owner using as a vehicle a deed stating false ownership and promoting its registration in a public registry constitutes grounds to exempt the debt incurred thereby from the bankruptcy discharge because of false representation, false pretenses and fraud.

The second link in the chain is that after Delgado Rodríguez filed her complaint in state court to, *inter alia*, recover the property, Rivera Siverio registered a mortgage lien to secure a promissory note. PSUMF ¶43, 44, 45 and 46. In those instruments she also falsely stated that (a) "she was the owner in full ownership" of the property in controversy, PSUMF ¶47, (b) that she acquired the property by deed number 3 dated March 10, 2000, PSUMF ¶48, (c) she promoted the mortgage registration before the San Germán office of the Property Registry. PSUMF ¶49, (d) she obtained registration of the lien over the property in controversy as per note 5 on the books. PSUMF ¶50. All of this was done while she was conscious of the fact that the true owner of the property was Miguelina Delgado Rodríguez. PSUMF ¶66.

But her pretenses didn't stop there. She was willing to take all steps necessary to secure the profit and consume what she is now calling an "offer".

During the process of plaintiff's state court complaint to recover the property, Rivera Siverio executed deed number 163 before Notary Public José Luis Baez Rivera by which the property in controversy was sold to Jaime William Alago Vargas and Grisell María Rodríguez Cordero for the amount of $60,000.00. PSUMF ¶51. In said deed Mrs. Rivera Siverio represented to have sufficient legal capacity to subscribe the deed. PSUMF ¶ 52. She also represented to be the owner of the property in controversy. PSUMF ¶53. She further represented having acquired the property through deed number 3 dated March 10, 2000. PSUMF ¶54. This sale prevented the remedy of recovery of the property in controversy. PSUMF ¶55. Although the Deed states that the sale price was $50,000.00 the truth is that there was an additional $10,000.00 paid, for a total sale price of $60,000.00. PSUMF ¶ 56. In addition, and contrary to statements made on deed number 163, the buyer did not withheld the sales price to pay off the mortgage but instead checks were issued payable to the order of Luis R. Martinez Martinez, who at the time was Sheida Rivera Siverio's husband. PSUMF ¶ 57.

In this case "Rivera Siverio" made multiple false representations on deeds number 3, 11 and 163 regarding her title, her transferor's title, basis for ownership and her own ownership over the property in controversy. These statements were false because she was conscious of the fact that the real owner of the property was "Delgado Rodríguez". SUMF¶ 66.

These statements were meant to deceive by creating deeds, later ruled as void SUMF¶ 67, for the purpose of presenting them for registration before the

property registry to secure the illusion of a title. This illusion obliged "Delgado Rodríguez" to file and pursue a civil complaint for recovery of the property SUMF¶43. Worse yet, while the complaint was pending "Rivera Siverio" enhanced her false statements by issuing deed 11 and 163, to consummate her deception and converting "Delgado Rodríguez" property to cash in order to expend and deplete the proceeds SUMF¶44-57.

The concept of false pretenses is specifically broad. It includes any intentional fraud or deceit practiced by whatever method in whatever manner. In Re Peckman, 442 B.R. 62, 74 (2010). False pretenses can be made in or any of the ways in which ideas can be communicated. First Nat Bank v. Aetna, 256 F. Supp. 266, 272 (D. Mass. 1966).

As to actual fraud, as used in 11 USC §523 (a) (2) (A) it is not limited to misrepresentations and misleading omissions... when a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right..." Mellon Bank v. Vitanovich (In Re Vitanovich), 259 BR 873, 877 (6th Circ BAP 2001).

The undisputed facts shows that "Rivera Román" gave the loan with the condition that she receive a security for the payment. SUMF¶13. "Delgado Rodríguez" consented. SUMF¶15.

Later on, deed of sale number 309 was executed by "Rivera Román" and "Delgado Rodríguez" by suggestion of the Notary Public Luis A. Arroyo Vázquez SUMF¶ 18 and 19.

This argument was a personal guarantee and "Rivera Román" became a creditor of "Delgado Rodríguez" SUMF¶24 and 25. "Rivera Román" didn't became the owner SUMF¶ 26 and never acquire the legal capacity to transfer ownership to third parties SUMF¶ 27. She had a duty to appear before the courts of justice to claim her credit SUMF¶28. However, "Rivera Siverio" interfered with this agreement.

Delgado relied on the agreement and paid $15,000.00 of the $30,000.00 SUMF¶29. The agreement didn't provide for a term to pay the debt SUMF¶ 17. Thus, "Delgado Rodríguez" was justified in expecting a lawsuit for collection of monies but had no way to expect that her $60,000.00 property would be alienated for $15,000.00. She was a victim and the only loser.

However, her reliance proved costly for her and, no matter what she did, "Rivera Siverio" was going to do anything to have it her way. So, she was always one step further in her scheme.

It didn't even matter to her that the title was being reasonably and justifiable questioned in the state court litigation. So, she was always one step further in her scheme through the use of false statements, pretenses and her fraud.

"Rivera Siverio" stated that there was nothing in the law that prohibited the sale to a third party. This allegation is without merit. Her acquisition was simply null and void because she didn't acquire from the real owner of the property SUMF¶66. Her transferor didn't ever become owner of the property

SUMF¶ 26 and didn't have the legal capacity to transfer ownership rights SUMF¶27.

That been said, a basic tenet of real estate and of social orderly conduct, is that no one can alienate something that don't belong to them. Otherwise, it's an illegal appropriation. Thus, the fact of the matter was that "Rivera Siverio" wasn't allowed by the law to acquire the property much less to dispose of it. After all, she was conscious that the real owner was "Delgado Rodríguez" SUMF¶ 66. There was no need for a prior court ordered prohibition. As a matter of fact the law looks with suspicion over agreements made in regards to property subject to litigation if, as in this case happened, a contract is made without the knowledge and consent of other parties to the case or without court approval. Puerto Rico Civil Code Art. 1243; 31 L.P.R.A. §3492. This type of transaction is rescindable by law if, as in this case it was, the contract is made without court approval or consent of the parties. Whether or not an order to assure the effectiveness of a judgment is in effect prior to the contract is immaterial to the inquiry. After all, values are not to be left at the doorstep of the court.

The fact that there was no provisional remedy to prevent the sale doesn't excuse her actions but aggravate them. She knew about the terms and conditions of the loan agreement between "Rivera Román" and "Delgado Rodríguez" SUMF¶64, she was conscious of the fact that the real owner of the property was "Delgado Rodríguez" SUMF¶66, she was named a defendant in a litigation that was seeking recovery SUMF¶43 a remedy "Delgado Rodríguez"

13

would've obtained but for "Rivera Siverio" "Rivera Siverio" illegal disposition of the property through false statements, false representations and actual fraud by means of executing deeds to manipulate the property registry system.

V. **Summary Judgment Standard**

In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." *Desmond v. Varrasso (In re Varrasso),* 37 F.3d 760, 762 (1st Cir.1994). "By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." *Id.; see also* Fed. R. Bankr.P. 7056; Fed.R.Civ.P. 56. "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." *In re Varrasso,* 37 F.3d at 763 (citation omitted). "[E]ven if unopposed, a motion for summary judgment can only be granted if the record discloses the movant's entitlement to judgment as a matter of law." *Maldonado-Denis v. Castillo-Rodriguez,* 23 F.3d 576, 583 n. 6 (1st Cir.1994) (citing *Mendez v. Banco Popular de P.R.,* 900 F.2d 4, 7 (1st Cir.1990)).

VI. **Collateral estoppel**

Collateral estoppels principles apply in dischargeability proceedings. Grogan v. Garner, 498 U.S. 279 (1991).

In the Commonwealth of Puerto Rico, a party seeking to invoke the doctrine of collateral estoppel must establish that (1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and

binding final judgment; and (4) the determination of the issue was essential to the judgment. **Mercado Velazquez v. COSVI**, 2012 WL 682374 (P.R. Cir. Jan. 31, 2012).

Under *res judicata* or claim preclusion, a final judgment on the merits of an action precludes the parties and their privies from relitigating the same issues that were or could have been raised in that action. Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citation omitted). *Res judicata* is fundamentally different than collateral estoppel or issue preclusion, where "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Id. (citation omitted); see also Oficinas Medicas, Inc. v. Feliciano de Melecio, 47 F. Supp. 2d 174, 178 (D.P.R. 1999).

A review of the statement of uncontested material facts submitted by "Delgado Rodríguez" shows that the movant has pinpointed the exact issues litigated in the prior action and introduced the judgments to support the controlling and undisputed facts.

WHEREFORE we request from this Honorable Court to deny defendants motion for summary judgment and grant plaintiff's motion providing for the issuance of summary judgment granting on all counts the remedy requested in the Second Amended Complaint, and exempt from discharge the debt that Delgado Rodríguez holds against Rivera Siverio under 11 USC §523(a)(2) and 11 USC §523(a)(6).

CERTIFICATE OF SERVICE: I hereby certify that on this same day I electronically filed the foregoing document(s) with the Clerk of the Court for the US Bankruptcy Court for the District of Puerto Rico by using the CM/ECF system. I certify that the following parties or their counsel(s) of record are registered as ECF Filers and that they will be served by the CM/ECF system: José Ramón Carrión Morales, Chapter 13 Trustee and Armando Lamourt Rodríguez, Esq.

In Hatillo, Puerto Rico, this 6th day of April 2015.

Respectfully Submitted

s/ Alberto J. Torrado Delgado
PO BOX 1329
HATILLO PR 00659-1329
TEL. (787) 262-5138
FAX (787) 898-6640
USDC No. 216413
alberto@torrado.com